Good afternoon. We have two cases this afternoon. And we will start with United States v. Josey, number 24-1891. May it please the court, Frederick Wohlberg on behalf of the appellant Xavier Josey, I'd like to reserve two minutes of my time for rebuttal.  In the post-Kaiser, Messire, Adair, Mercado, Caraballo framework or landscape, these guideline interpretation and application issues tend to be fairly complicated. But for several reasons, we believe in this case that the issue can be resolved in a relatively straightforward manner. First, the plain text of Section 4A.1.2.2 says you look back in terms of finding criminal history 10 years from the commencement of the instant offense. In our view, those terms aren't ambiguous. Commencement means the start, the beginning. And the instant offense is the one you're in front of the court for to be sentenced on. Well, maybe that's true if we take them in isolation. But one of the things that's sort of interesting about the commentary here is that it defines the entire phrase, commencement of the instant offense. And that's not a term that you look up in the dictionary. And if we look at that as sort of a term of art, then why doesn't that introduce ambiguity for looking at the whole phrase? Well, I don't think it's necessary to define it as a complete phrase. I mean, commencement means to begin something. And instant offense actually is a term of art. If you look at the commentary following 1B.1, they define a whole bunch of things that occur in the guidelines, and one of them is instant offense. So I don't think it's necessary to treat it as one thing. I mean, commencing an offense is something, and an offense is something. I noticed that the government spent considerable time avoiding talking about commencement and instant offense and focusing instead on just offense. We think that these terms are relatively clear. But once you go to the commentary and accept it as – accept the terms as ambiguous, it creates a secondary problem because it takes you to almost like a cross-reference to the relevant conduct guideline. But what it does is it runs you headlong into 1B.1.3b, which says the relevant conduct guideline doesn't apply to Chapter 4, which is where we are. And if that wasn't clear, you'd turn a couple of pages in the manual and you're at the background commentary following 1B.1.3. And the background commentary says relevant conduct is a rule of construction. It has applications in Chapters 2 and 3, but it has no application in Chapters 4 and 5 because those chapters contain the necessary factors to calculate, for instance, criminal history. Well, we wouldn't automatically go to the 1B.1.1 guideline, right? To the commentary for 1B.1.1. We'd be looking initially at the guideline itself. Correct. We don't think there's any lack of clarity there. It says it doesn't apply to Chapters 4 and 5. But if you did think there was a lack of clarity and you looked at it, you'd see. And it's background commentary anyway, so it's treated differently, at least in this court's post-Kaiser jurisprudence, than interpretive commentary. And Stinson says that where you have a conflict between the commentary and a guideline, the Sentencing Reform Act requires or commands that the guideline control, in this case 4A.1.2b.2. And this is all consistent with this court's post-Kaiser jurisprudence anyway, where you have a definitional. What interpretive commentary should do is simply clarify things. It shouldn't create a problem in terms of the application. And where you have commentary like you do here that expands the definitional framework and expands the scope of the guideline itself, you don't have to give it any weight. It's very much the problem the court identified in the seer, where the commission comes in and amends commentary without reference to what precedes it, in this case Section 1B.1.3. And it's not clarifying, it's expanding. And we also think that in this kind of a situation, which is different than the typical post-Kaiser problem where you're working your way through whether something's ambiguous, where you actually have a conflict with another provision, that the rule of lenity ought to apply. This case implicates all three core concerns. You don't have any notice. Mr. Josie's notice would have been what he was told in the indictment or what he was told at the guilty plea. You have an increase in punishment or at least an increase in a guideline range, punishment exposure, and you have an interpretation by both the district court and urged by the government that's in derogation of liberty. So what do we make of the term commencement? You say that's clear and unambiguous, but we've occasionally had to wrestle with that in, for example, deciding whether someone who was found in the United States, is that as of the finding, is that as of the crossing of the border? So say we are looking to commencement of just the charged offense. What is commencement here? Commencement is, so at least as the Seventh Circuit has defined it, you cross or travel in interstate commerce, in this case crossing the New York and Pennsylvania border, and you don't register in Pennsylvania within three days. You've committed the 2250 offense. And when does that commence? Three days after you've traveled in interstate commerce and failed to register. I think it's actually a discreet conduct in that sense. Now, I'm not going to dispute that as a matter of state law, you know, until Mr. Josie registers under the state Megan's law, he's in a continual violation of the statute. But at least as a matter of 2250, I think traveling across the state border and going to do what you got to do within that window, you've committed the offense. That's all the conduct that's necessary. And it doesn't matter whether, you know, what happened in New York when he failed to send in his verification or any of those things. And just getting back to the relevant conduct guideline for a moment, I mean, the relevant conduct and grouping of offenses, they're really aimed, their whole purpose is to sort of deal with aggregate harm, like a bunch of drug dealing and a drug trafficking organization, or a bunch of losses following wire transfers or bodily injury. And it's not a particularly good fit when you're trying to use that framework, that purpose and aim, to measure or toll timeframes associated with a look-back period under 4A1.2. And finally, we suggest that the district court's reliance on CAWLA was misplaced for at least three reasons. One, it doesn't deal at all with the post-Kaiser framework. Two, it doesn't wrestle at all with the fact that using the relevant conduct guideline puts you in conflict with Section 1B1.3b. And thirdly, completely, the court in that case completely discounted the interstate commerce component. I don't have anything further, but I can address any additional questions or return for a rebuttal. Well, you say they could be differentiated and not viewed as the same course of conduct because they serve different purposes, in that SORNA intended to address the avoidance of detection. Why isn't that true of Megan's Law as well? Well, for two reasons. It's elementally different. I mean, the Megan's Law, Mr. Josie registered under Megan's Law and he remained in New York and he updated his registration a couple of times. Traveling in interstate commerce to avoid registration or avoid detection is different, at least elementally. There's an interstate commerce component to it. The registration as a matter of Pennsylvania law, once it gets to Pennsylvania, I can see it as somewhat the same as updating your verification in New York. Those are state law concerns as opposed to this federal thing. And regardless, it's just simply different conduct and not the same, mostly because the elements are different. It's temporarily removed and it's at least different in Caldwell in the sense there's not some degree of regularity where you can be prosecuted several times for doing the exact same thing. SORNA also has its own provision for keeping the registration current, right? Three business days after each change of name, residence, employment, student status. That's correct. Every one of the states has to adopt that as their own. There's no federal registration requirement. They're all done by state authority, but it's imposed, as you pointed out, personally with SORNA. And when we're thinking about what would be a course of conduct if we are looking to relevant conduct, is there significance to that requirement being part of SORNA itself? Well, I guess the answer would be yes and no. Well, it's significant in the sense that each one of these states has their own state law provision, and that's a consequence, obviously, of the overarching SORNA scheme that's imposed upon them. But I don't think it really changes the fact that what you're doing as a matter of state law in terms of updating registration in New York isn't the same thing as coming to Pennsylvania, traveling interstate commerce, and not registering in the first place. Questions at this point? We'll see you in rebuttal. Thank you. Mr. Bannon. Good afternoon. May it please the Court, Patrick Bannon on behalf of the United States of America. I'd like to start by just addressing that the proposed readings of these two sections that Mr. Josie proposes, which limits commencement of the incident offense to simply what the dates that are listed in the indictment and same course of conduct to identical criminal conduct with respect to all the elements of the crime, it's inconsistent with the text of the guideline and the accompanying commentary. And I think for this reason, Mr. Josie is really not able to point to any decisions from this Court pre-Nasir or any decisions from any other circuit court pre- or post-Nasir that support those readings. And to start with this Court's decision in Hernandez-Gonzalez, which I think Mr. Josie dismisses it as pre-Nasir and therefore irrelevant, I think that that case is significant for addressing not necessarily the definition of commencement of the incident offense, but the proposed definition or the proposed reading that Mr. Josie gives it, which is that the dates of the indictment control. Because I think the Court, in deciding that commencement of the incident offense includes relevant conduct, obviously it relied on the guideline and the guideline commentary to do so. But it held in that case that that reading of the statute was consistent with other cases that hold that the offense charge in the indictment is not the relevant date for the purposes of determining when a charge offense was commenced for calculating the criminal history point. So I think that aspect of the Court's decision doesn't rely upon its reading of the commentary. And it finds that the dates in the indictment are simply not necessarily the correct dates for determining when an offense commenced. And that it's consistent with the reading of both the plain text of the guideline and the guideline with the accompanying commentary that points to relevant conduct. Surely, Post-Keiser, we're focused more, and as a threshold matter, on the text of the guideline. Absolutely. So when we look at that text where we've got commencement and incident offense, why can't we stop there and say incident offense, and there are multiple other places too in the context of the guidelines, but incident offense has the temporal element built into the term. This immediate offense that's before the Court. Well, I think the important thing to look at in terms of the structure of the guidelines as a whole is that there's two different terms that the guidelines use. There's incident offense and incident offense of conviction. And while I understand that the definition of offense which addresses those two different terms is in the commentary to Section 1B.1.1, which Mr. Josie referred to, that's how those terms are used throughout the guidelines. So I think that definition is seen throughout the use within the guidelines. In Section 4A.1.2, it's very specific that it's commencement of the incident offense, not commencement of the incident offense of conviction, where that term is used elsewhere in the guidelines to refer specifically to the offense of conviction. And we reference some in our brief. In Section 1B.1.2, offense of conviction is defined as the offense, conduct, charge, and the indictment or information which the defendant was convicted. So there's a clear distinction between the use of incident offense and incident offense of conviction within the whole guideline structure. And that's not how the term is used in this specific guideline. So even if the Court were just to look specifically at the text, I think Mr. Josie's proposed reading that it's the date and the indictment is clearly in conflict with that text. What do you make of the numerous guidelines that talk about relevant conduct separate and apart from incident offense? Or they talk about incident offense and things like subsequent to similar misconduct. Doesn't that suggest that other conduct besides the incident offense of conviction is really the distinction that the guidelines is drawing whenever it uses the term incident offense? Well, I think the way that the guidelines can qualify offense sometimes obviously implicates a potential different reading. But I think the important distinction is between offense and offense of conviction. Because those are the distinctions that come up most frequently in terms of addressing where the commission really wants to identify specifically the offense, charge, and the indictment. It does use the term offense of conviction. And I think if you look to specific sections, whether we're talking about Chapter 4 or even Chapter 2, other sections of Chapter 4, for example, the section 4C1.1, which deals with zero-point offenders, there's a list of factors that factor into whether someone gets the adjustment in 4C1.1. Some of them specifically reference offenses of conviction. Some of them in the same section reference only offenses. So even in specific sections, the commission makes a distinction between offense and offense of conviction. In Chapter 2, Section 2G1.1 and 2G1.3 do the same thing. Where when the commission wants to make a distinction between offense and offense of conviction, it does even within the same section. Taking a step back just for a minute, are we in agreement about what commencement means? Actually, let me take a step back further. You agree that we start with the text, right? And we don't go to the commentary unless there's an ambiguity. Yes. And presumably, you're arguing there's an ambiguity. So our argument, of course, is that, as we laid out in our brief, that the term commencement of the incident offense fully is ambiguous, and that the commentary is reasonable and it can be deferred to. But I think even if the court were to disagree with that, the text itself, just looking at the text, doesn't support the reading that Mr. Josie proposes, that the dates in the indictment are what controls as opposed to the offense being here because offensive conviction is not used, offense being a broader term than specifically the offense and the indictment. In this instance, you're making a distinction between the incident offense and the offense of conviction. What's the difference between the two? Well, I think the incident offense is a broader term. What is the incident offense here? When Mr. Josie failed to verify his registration in New York in May of 2019, that's when the incident offense commenced. Let's say there were 20 copyright violations that MGM is alleging against someone who's been showing a movie, and one of them is in our court and the others are in different districts that cover different time periods. We have a hearing on just one of the 20, and if I referred to the instant lawsuit or claim, would I be referring to the different time periods covered by the other claims, or would I be referring to just the particular one that the judge was adjudicating at that moment? Well, I think for the purposes of that hypothetical, again, our position is that the guideline is ambiguous, that reference to relevant conduct is appropriate, and that if the district court were to determine that these other offenses were relevant conduct... How is it ambiguous? I mean, Black's Law Dictionary, all the law dictionaries I've been able to see, the instant means this one, the one in this court right now. So what makes that ambiguous? Well, I think the fact that the guideline can point to both offenses and offenses of conviction in different circumstances, including within the same guideline provision, that there's at least two reasonable readings of what commencement of the incident offense could mean, which I think would read ambiguity into the guideline. And then you think if we find an ambiguity, we shouldn't go to lenity at that point? No, I think this court has addressed the lenity issue in the Chandler case and in McIntosh previously, and I think the reasoning there is persuasive in terms of that the ambiguity analysis is really first. There's other tools of construction that can be used after an ambiguity determination is made before jumping directly to lenity, and one of those tools is resort to the commentary, which in this case actually defines offense, instant offense, and offense of conviction clearly in the commentary, the 1B1.1, and defines commencement of the incident offense specifically in Section 4A1.2. So I think before resorting to lenity, there are other tools, including the commentary, that can be used here, and I think that's what the court said in Chandler, and it said in McIntosh as well. Once we follow most of that path, don't we get to a point where we have the guidelines themselves telling us that we should be looking only to the guideline, only to the specific offense at issue, and not relevant conduct? I mean, we come full circle, don't we, once we get to the relevant conduct guideline? I'm sorry, I'm not sure I understand that. That is that the Chapters 4 and 5 are being treated differently, right? Well, I think the Chapters 4 and 5 are addressed in Section 1B1.3, but I don't think they're addressed in the way that Mr. Josie proposes, that somehow relevant conduct is not considered at all, or they're prohibited from considering relevant conduct in those sections. I think it just, in 1B1.3, it simply says that the factors which determine the guideline as laid out in those factors is what should be considered unless otherwise specified. So I don't think it prohibits consideration of relevant conduct, and I think it's telling that the Commission in the commentary here references back to 1B1.3 directly in defining the commencement of the incident offense. I think it would be inconsistent to say that the Commission prohibited looking at relevant conduct and then specifically said that relevant conduct should be considered. So what is the distinction you think is being made there between the treatment of Chapters 2 and 3 and 4 and 5? Well, I think in that instance, the guideline is stating that Sections 4 and Section 5 lay out specific factors that should be considered, and those should be considered in the first instance. Now, I know in Section 4, specifically in 4A1.1, it's in the commentary where it refers back to relevant conduct, but in Section 5, it refers back to relevant conduct in other places as well. So I think the fact that Section 1B1.3B references Chapters 4 and 5, I think is just for the consideration of those factors to be considered initially without prohibiting the look back to relevant conduct if it's appropriate. You don't take conduct and information specified in the respective guidelines to be pointing you back to essentially the conduct limited to the offense of conviction? Well, I don't think it's conduct limited to the offense of conviction here because it's not the term that's used in 4A1.2. But I think, to your point, I think it is true that 1B1.3, the relevant conduct guideline, does specify that Chapters 4 and 5 are to be considered, obviously, first, but there's nothing there, I don't think, that prohibits looking back to relevant conduct once those factors are considered. And like I said, in Chapter 4, in 4C1.1 specifically, for zero-point offenders, there's a whole list of things that must be met, and some of them are offenses of conviction and some of them are offenses. It's different, and it's the same for 4B1.1. The career offender guideline only applies to offenses of conviction, not to instant offenses. So I think the fact that Chapter 4 has instances where both terms are used and they're both used in the same section, I think, creates this distinction where, with offense specifically, as it's used here, relevant conduct should be considered. Or at least it should be considered more broadly than Mr. Josie proposes, where it's just the dates and the indictments specifically. Can you point us to any authority that has adopted your interpretation of 4A1.2 here without resorting to the commentary? No, Your Honor. I don't think other courts have addressed that issue because, for the most part, since this year, courts have held that 4A1.1 includes relevant conduct, but they've done so presumably the commentary. This Court has not addressed the issue previously, which we acknowledge. There's no Third Circuit precedent we could point to. There's no precedent post-this year that we could point to from any other circuit, but all the other circuits have relied on commentary and found that to be appropriate, and that relevant conduct should be considered in defense of conviction. I think Mr. Josie can't point to any case which holds that his proposed reading is the one that should control here. I just want to ask a question about the record. Is there anything in the record to suggest that there was a crossing of state lines before January 10, 2023? No, there isn't. But I think, to your point, Mr. Josie relies heavily on the fact that there's an interstate component to 2250, which is the jurisdictional nexus for that crime. But I think this Court has specified in the past that relevant conduct is conduct that the Court doesn't necessarily have to have even jurisdiction over it for it to be considered relevant conduct. So the fact that there is a jurisdictional element to 2250, but not necessarily to the New York violations for failure to register, or failure to verify his registration, I don't think prohibits those two from being considered relevant conduct. Is the crossing of interstate lines, you referenced that as jurisdictional, but say we disagree with you as to whether we're limited to looking at this offense. If we're looking at commencement of this offense as offense of conviction, when is commencement? Is a lesson from Hernandez-Gonzalez that it's when the state line is crossed, or is it three days later when someone fails to register? If, hypothetically, we're looking at the offense of conviction. Well, I think in looking at the offense of conviction, I think we'd be looking at something completely different than we're looking at here, and that might be the case, that the offense of conviction was the violation of 2250 of which he was convicted. I see my time is up. But the guidelines specifically uses commencement of the incident offense, so I agree if the guidelines said commencement of the incident offense of conviction, then we would be in a different situation than we are now, and we would be looking at 2250. My question to you is, assume hypothetically it's offense of conviction. I'm asking about your assertion that crossing state lines is jurisdictional. Is it only jurisdictional? Or if we assume, for purposes of this question, that we're looking at commencement of the offense of conviction, does that commence as of crossing state lines, or does it commence three days later when someone fails to register? I believe it commences, in that hypothetical, would commence three days later when there's a failure to register, just because that's a specific element, I think, of 2250. Whereas if someone crosses state lines and then registers two days later, they would be within the statute. I don't think they could be convicted under 2250. So I think in that situation it would be the failure to register three days later. Thank you. Thank you. Just to follow up on a couple of the court's questions, I think one way to look at the New York conduct is, Mr. Josie could have committed the 2250 offense if he had registered in New York. He simply would have crossed state lines and then updated his verification, I should say, in New York, and not registered in Pennsylvania. Which points up just how discreet that particular offense is relative to New York. Second, why not use the dates in the indictment or the dates in the Gilligan colloquy? That's what you're telling the person that they're pleading guilty to, this conduct that occurred on these dates. It seems important if for no other reason that's part of the guilty plea colloquy and that's part of the charging document that the government prepared. And when you look at a lot of these cases, Hernandez-Gonzalez is one of them. He frankly admitted coming into the country quite a bit earlier. And most of these other cases have the same sort of framework, where the person either admitted as part of the guilty plea colloquy, as part of the probation office interview, or in some other form, that they committed the offense quite a bit earlier. I think there's a gun collection case, Jones maybe, from the Seventh Circuit, where the person had a prior disqualifying felony but had this gun collection for many, many years. And it was part of a divorce settlement, so everybody knew when he had the gun collection. It was many years earlier. But Hernandez-Gonzalez in all these cases follow the same sort of logic. They all refer to the entry in Hernandez-Gonzalez as relevant conduct, which is the point that we're trying to make here, is that that's not appropriate if the language isn't otherwise ambiguous, and it's not appropriate specifically here because 1B1.3b says you don't apply this chapter to Chapter 4. And regardless of any of these concerns, the fact of the matter is any district court judge could look at somebody's criminal history and just say, well, you know what? 4A1.3 says I'm not getting adequate consideration of these other offenses because they're outside the timeline. I can upwardly depart or upwardly vary. Regardless, the court has plenty of discretion to address any insufficiency in terms of criminal history as part of the sentence. Thank you. Can you address, Mr. Bannon spoke with us about an alternate interpretation of the 1B1.3 language for Chapters 4 and 5. What's your response? I don't think you could have an alternate interpretation. They specifically carved those two sections out in 1B1.3b as not part of the relevant conduct guideline. But the background commentary, which this court has treated differently than interpretive commentary, is very specific that relevant conduct is a rule of construction that has no application to Chapters 4 and 5 because they have their own criteria. So if there was sort of an alternate interpretation of that provision, the background commentary clears it up. For these reasons, we ask the court to vacate and remand for re-sentencing. Thank you. Thank you. Thank you, both counsel, for returning to us this afternoon, and we will take this case under advisement.